IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| AMALGAMATED LOCAL 716 OF THE INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA | | PLAINTIFF |
| V. | CAUSE NO. 4:11-CV-00205-CWR-LRA | |
| THE INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA; STACY MATTHEWS; AND DWIGHT DULEY, INDIVIDUALLY AND AS INTERNATIONAL SECRETARY-TREASURER OF THE INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

This is a dispute regarding a withdrawal of funds prior to the dissolution of a local union chapter. The Court has reviewed the international union's motion to dismiss along with the local chapter's response thereto and, after due consideration, has concluded that the motion must be granted. However, the Court also grants the plaintiff leave to file an amended complaint within 21 days of this Order's entry.

Amalgamated Local 716 of the International Union, Security, Police and Fire Professionals of America (hereinafter "Local 716") is a local union of the International Union, Security, Police, and Fire Professionals of America (hereinafter "the International"). The relationship between the two is governed by a constitution.[1] When Local 716 collects dues from

---

[1] Constitution and By-Laws of the International Union, Security, Police and Fire Professionals of America [Docket 4-1].

1

its members, a certain percentage is remitted to the International, and a certain percentage is reserved for its own operations. However, any decisions regarding Local 716 funds must be approved by Local 716's executive committee.

Local 716 decided to dissolve, but prior to dissolution, International secretary-treasurer Dwight Duly instructed Local 716's former financial secretary, Stacy Matthews, to close Local 716's account and to turn over all proceeds to the International.[2] Matthews did so. When Local 716 learned of the payment, it demanded that the International return the roughly $14,000, but the International refused to do so.

On November 29, 2011, Local 716 sued the International and other defendants in Lauderdale County Court. Specifically, Local 716 sought compensatory damages, punitive damages, and injunctive relief for four state-law claims: conversion, tortious interference with business and contract, "intentional and/or negligent misrepresentation/fraud," and breach of fiduciary duties.[3]

The defendants removed the case to federal court,[4] and soon thereafter, they moved for dismissal.[5] According to the International, Local 716's claims are preempted by the Labor Management Relations Act and the case therefore must be dismissed.

---

[2] Because this case is before the Court on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court considers all properly pled facts to be true and views them in the light most favorable to the non-moving party. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

[3] State Court Record [Docket No. 1-3] at 2-3.

[4] Notice of Removal [Docket No. 1]. The defendants invoked Title 28, Section 1331 of the United States Code to contend that this case presents a federal question.

[5] Motion of Defendants to Dismiss and Brief in Support [Docket No. 4].

# ANALYSIS

Section 301 of the Labor Management Relations Act is memorialized at Title 29, Section 185 of the United States Code. This statute establishes that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[6]

Broadly speaking, this provision "preempts state causes of action that allege the violation of a collective bargaining agreement affecting interstate commerce,"[7] but only if the state-law claim "requires the interpretation of a collective-bargaining agreement."[8] This preemption doctrine springs from the fear that state courts might apply different definitions to the same contract terms, thereby creating incongruent results.[9] But by preempting state-law claims and requiring these disputes to be brought in federal court, the LMRA "fashion[s] a uniform body of law regarding collective bargaining agreements and other labor contracts."[10] Therefore, when a contract between labor organizations is violated, claims stemming therefrom must be brought under the LMRA.[11]

---

[6] 29 U.S.C. § 185(a).

[7] *Branson v. Greyhound Lines, Inc., Amalgamated Council Ret. & Disability Plan*, 126 F.3d 747, 753 (5th Cir. 1997).

[8] *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).

[9] *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

[10] *Trevino v. Ramos*, 197 F.3d 777, 779 (5th Cir. 1999).

[11] *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012) ("[A]ny state court suit alleging violation of a labor contract must be brought under Section 301 and resolved under

Under some circumstances, a defendant's theory of the case can invoke Section 301's preemptive power. "[A] defense that relies upon the provisions of a collectively-bargained agreement does not invoke federal preemption unless that agreement contains provisions that govern, or reasonably might be construed as governing, the circumstances at hand."[12]

In the International's view, this latter scenario presents itself in this case: although Local 716's claims clearly are articulable through state law, they cannot be adjudicated without reviewing the terms of the International's constitution.[13]

Local 716 argues that the claims in its Complaint spring solely from state law and that this case does not implicate any contract. According to Local 716, this case "is not a labor dispute involving wages, working conditions or strike rights; it is a dispute between people and entities over who took the funds rightfully belonging to the Local."[14]

The central question in play is "whether the . . . tort action . . . confers nonnegotiable state-law rights on employers or employees independent of any right established by contract or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."[15] And although it is true that "not every dispute . . . tangentially

---

federal law.").

[12] *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 174 (5th Cir. 1989).

[13] *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 99-100 (1991) (suits involving interpretations of union constitutions are subject to LMRA preemption).

[14] Response to Defendants' Motion to Dismiss and Brief in Support [Docket No. 9] (hereinafter "Local 716 Brief") at 3.

[15] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

involving a provision of a collective-bargaining agreement[ ]is preempted by Section 301,"[16] this Court concludes that the International constitution "contains provisions that govern, or reasonably might be construed as governing, the circumstances at hand."[17]

That conclusion rests on the observation that each of Local 716's state-law claims involves an element that would require interpretation of the International constitution. Among other things, the conversion claim at the center of this suit[18] requires proof of "wrongful possession,"[19] and no court could determine whether the International's possession of the funds is "wrongful" without evaluating the terms of the International constitution. Likewise, a claim for tortious interference with business relations must include proof of "unlawful purpose,"[20] and that cannot be determined without deciding whether the International constitution permitted the International to receive the funds as it did. The claim for "intentional and/or negligent misrepresentation/fraud" requires proof that a defendant misrepresented its rights under the International constitution,[21] and the question of whether a fiduciary duty exists also would require

---

[16] *Id.* at 211.

[17] *Wells*, 881 F.2d at 174.

[18] Although the Complaint presents four claims, Local 716 describes this case as "a simple matter of conversion under state law." Local 716 Brief at 3.

[19] *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 772 (Miss. 2004) (quoting *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998)).

[20] *Richard v. Supervalu, Inc.*, 974 So. 2d 944, 950 (Miss. Ct. App. 2008). *See also O.W.O. Inv., Inc. v. Stone Invs. Co., Inc.*, 32 So. 3d 439, 448-49 (Miss. 2010) (reciting elements of tortious interference with contract, which includes "unlawful purpose").

[21] *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1164-65 (Miss. 2010) (reciting elements of negligent misrepresentation). *See also Smith v. Chhabra*, 54 So. 3d 877, 880 (Miss. Ct. App. 2011) (reciting elements of fraud, including "falsity").

interpretation of the International's responsibilities under its constitution. In short, at every turn, this case turns on the substance of the International constitution.

In fact, Local 716's brief repeatedly comes within a hair's breadth of conceding this point. Local 716 argues that the defendants withdrew money from the account "without authorization,"[22] and contends that the International constitution required the International to delay its pursuit of the funds until after Local 716's dissolution.[23] These arguments cannot be weighed without reviewing the terms of the International constitution.

Therefore, the Court finds that Local 716's claims are preempted by Section 301 of the LMRA and dismisses the claims without prejudice. The Court also exercises its broad discretion to permit Local 716 to amend its Complaint[24] so that it states a claim under the LMRA. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."[25]

## **CONCLUSION**

The International's motion to dismiss is granted. Local 716 is granted leave to file an amended complaint within 21 days.

Additionally, within ten days of the filing of the Amended Complaint, the parties shall contact the chambers of the Magistrate Judge so that a Scheduling Order may be entered.

---

[22] Local 716 Brief at 1.

[23] Local 716 Brief at 5.

[24] *See* Fed. R. Civ. P. 15(a)(2) (when a plaintiff cannot amend his complaint as a matter of right, "a party may amend its pleading only with the opposing party's written request or the court's leave. The court should freely give leave when justice so requires.").

[25] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

SO ORDERED this Sixth day of July 2012.

        /s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge